Chase v. Tuttle.

AUGUSTUS S. CHASE AND ANOTHER, TRUSTEES IN INSOL-
VENCY, vs. NOAH B. TUTTLE AND OTHERS.

New Haven Co., June T., 1887. PARK, C. J., CARPENTER, PARDEE,
LOOMIS and BEARDSLEY, Js.

There were five directors of a joint stock corporation, and it became a mat-
ter of importance that it should make an immediate assignment for
the benefit of its creditors. Two of the directors were absent in distant
states and could not be reached by notice of a meeting of the directors,
but notice was sent them at their places of residence in this state.
Held that the three remaining directors, being a quorum, had power to
make a valid assignment.

If their absence was to be regarded as creating two vacancies which
the remaining directors had power to fill, they would not have been
bound to fill the vacancies and would have had power to act as the
sole directors.

One of the directors present was C, who had been formally elected a
director. By the joint stock act of 1880 the directors of such cor-
porations were to be stockholders. C was not at the time a per-
sonal stockholder, but was the secretary, treasurer and managing
director of a savings bank which was a stockholder. The court
inclined to the opinion that he might be regarded as a stockholder
by representation.

However this might be, he was eligible under the act of 1876, (Session
Laws, ch. 65,) which provides that any one of the directors or execu-
tive officers of a corporation owning stock in another corporation, may
be elected a director of the latter corporation.

This act is not repealed by the joint stock act of 1880.

The act of 1885, (Session Laws 1885, ch. 110, sec. 100,) provides that the
directors of any corporation may make an assignment of it in insol-
vency "in a legal meeting called for such purpose." Held that,
where there was no provision in the by-laws of the corporation to the
contrary, the directors, when together, could agree at once to hold a
meeting for the purpose, without any previous notice.

And in the present case, two of the five directors being beyond the reach of
notice, the remaining three, being all who were capable of acting,
could thus meet and act.

The record of the directors' meeting at which the assignment in question
was made, ran as follows :—"At a special meeting of the directors called
for the purpose of making an assignment for the benefit of all the
creditors," etc. Held that, upon this record, until the contrary was
shown, it would be presumed that the purpose of the meeting was speci-
fied in the call.

The burden of proof of showing that it was not so specified would be on the other party.

Notice had been sent by the secretary to the directors by telegram, and the court below found that "there was no evidence that the telegrams contained any notice of the purpose of the proposed meeting." Held not to be a finding that the telegrams did not state the purpose of the meeting, but only that the contents of the telegrams were not proved, and that the state of the question was not varied by the finding.

[Argued June 7th—decided October 19th, 1887.]

REPLEVIN, by the trustees in insolvency of Brown & Brothers, a joint stock corporation, to recover certain personal property attached by the defendant Tuttle as a deputy sheriff, upon a writ in favor of the National Shoe & Leather Bank, which was also made defendant; brought to the District Court of Waterbury, and heard before *Bradstreet, J.*, who rendered judgment for the plaintiffs. The defendants appealed to the Superior Court for New Haven County, in which court the following facts were found.

The corporation of Brown & Brothers was organized in 1853, with a capital of $200,000 divided into eight thousand shares of the par value of twenty-five dollars each. Its business was carried on at Waterbury in this state. On the morning of January 4th, 1886, the National Shoe & Leather Bank of New York, the principal defendant, caused the property described in the writ of replevin to be attached by writ dated January 2d, 1886, and acquired thereby a valid lien on the property, which lien still exists unless it has been dissolved by the assignment in insolvency to be mentioned.

A meeting of the directors of the corporation was held on the evening of the 4th day of January, 1886, in the city of Waterbury, at which meeting there were present H. R. Coit, W. H. H. Wooster and L. P. Wooster. At this meeting a vote was passed to make an assignment of the property of the corporation in insolvency for the benefit of its creditors. In pursuance of this vote an instrument in writing and under the seal of the corporation, was, on the same day, executed, and returned to the office of the court

of probate for the district of Waterbury, and afterwards accepted, approved and recorded, by order of that court. On the 22d of January, Franklin Farrel, the trustee named in the deed, declined to accept the trust, and Augustus S. Chase and Edward C. Lewis, the plaintiffs, were appointed as trustees and gave bonds to the acceptance of the court.

The defendants objected to the admission of this instrument in writing as not being a valid assignment in insolvency, and claimed that it was invalid, among other reasons, because the vote which purported to authorize the execution of the assignment was not passed at a legal meeting of the directors of the corporation called for that purpose, and because Mr. Coit, one of the three persons present at the meeting when the vote was passed, was not a legally qualified director of the corporation.

The by-laws of the corporation of Brown & Brothers provided that its board of directors should be not less than three nor more than five. The only by-law relating to the meeting of directors was—" *Article* 13. Meetings of the directors may be held as often, at such place, and in such manner, as they may from time to time determine." There was no evidence of any action of the directors under this by-law prescribing the place or manner of holding such meetings or how often they should be held.

On the 25th of August, 1884, Mr. Coit was appointed a director in place of a director who had resigned his office. He continued an acting director under that appointment until the next annual meeting of the stockholders of the corporation, held on the 2d day of February, 1885, at which meeting Franklin Farrel, B. P. Chatfield, H. R. Coit, W. H. H. Wooster and L. T. Wooster, receiving a majority of the votes cast, were declared elected. Mr. Coit continued an acting director of the corporation under that election up to the time of the assignment in insolvency.

At the time when he was appointed in August, 1884, to fill a vacancy in the board, and at the time when he was elected director in 1885, Mr. Coit was not, and so far as appears, never had been a stockholder in the corporation.

The Litchfield Savings Society, a corporation chartered under the laws of this state and located at Litchfield, was at the. time of Mr. Coit's appointment in August, 1884, and at the time of his election in February, 1885, a stockholder in the corporation, and at both those times and prior thereto and ever since, Mr. Coit was and continued to be the secretary, treasurer and managing agent of the Litchfield Savings ·Society.

On the 4th day of January, two of the five persons above named as having been elected directors at the next prior annual meeting of the stockholders, to wit, Franklin Farrel and B. P. Chatfield were absent from the state. Franklin Farrel was in the territory of Montana, and B. P. Chatfield was in the state of South Carolina. After the service of the writ of attachment and on the afternoon of the 4th day of January, L. T. Wooster, the secretary of the corporation, caused notices to be prepared that a meeting of the directors of the corporation would be held on the evening of that day, at the office of Gillette & Webster in the city of Waterbury, and forwarded such notices by telegram, addressed to each of the following named persons at their respective places of residence in·this state, to wit: Franklin Farrel, Ansonia; B. P. Chatfield, Waterbury; H. R. Coit, Litchfield; W. H. H. Wooster, Waterbury.

There was no evidence that the telegrams contained any notification as to the purpose of the proposed meeting. No notice for the meeting appears on the record book of the corporation. The record of this meeting of the directors, however, upon the record book, runs as follows:—" At a special meeting of the directors of Brown & Brothers, called for the purpose of making an assignment of its estate in insolvency for the benefit of all the creditors, pursuant to the statute, held;" etc. No notices or copies of notices of any meeting of the directors appear on the record since its organization.

Upon these facts the case was reserved for the advice of this court.

*C. R. Ingersoll* and *S. W. Kellogg*, with whom was *J. P. Kellogg*, for the plaintiffs.

1. The assignment was valid. Being made by a majority of the directors, it was valid at common law. 1 Morawetz on Corp., 2d ed., § 513; 2 id., § 804 and note; *Sargent* v. *Webster*, 13 Met., 497. The statute makes a majority of directors a quorum. Gen. Statutes, p. 279, sec. 12. And the act of 1885 provides expressly that the directors of a corporation may make an assignment. Session Laws 1885, ch. 110, sec. 100. See also *Bank of Middlebury* v. *Rutland & Washington R. R. Co.*, 30 Verm.; 170; *State ex rel. Page* v. *Smith*, 48 id., 266, 286; *Edgerly* v. *Emerson*, 23 N. Hamp., 555.

2. Mr. Coit was a *de facto* director. *Brown* v. *O'Connell*, 36 Conn., 432; *State* v. *Carroll*, 38 id., 471. His authority cannot be questioned in a suit between third parties. But he was also director *de jure*. As secretary, treasurer and managing director of the Litchfield Savings Society, which was a stockholder, he is to be regarded as a stockholder. But if not, yet clearly he was eligible under the act of 1876. That statute is not repealed by the new joint stock act of 1880. The two are consistent and harmonious.

3. The directors' meeting was a legal one. The fact that two directors were in distant parts of the country and beyond the reach of notice, gave the others, being a majority and a quorum, power to act without them. No notice of the meeting was necessary when all who were capable of acting were present, but if necessary it will be presumed, the record of the meeting stating that it was called for the purpose of making an assignment. *New Haven Sav. Bank* v. *Davis*, 8 Conn., 191; *Lane* v. *Brainerd*, 30 id., 566; *Sargent* v. *Webster*, 13 Met., 497; *Chouteau Ins. Co.* v. *Holmes's Admr.*, 68 Misso., 601; *McDaniels* v. *Flower Brook Manf. Co.*, 22 Verm., 274, 284.

4. The decree of the probate court accepting the assignment and appointing the trustees cannot be attacked collaterally, but can be set aside only on an appeal. Acts of 1885, ch. 110, sec. 16; *Farwell* v. *Crandall*, 120 Ill., 70.

*J. S. Beach* and *G. C. Lay* of New York, for the defendants.

*First.* Mr. Coit, at the time he took part in the meeting of the corporation held January 4th, 1886, was not a legally qualified director of that corporation.

1. He was not and never had been a stockholder in the corporation. " The property and affairs of every joint stock corporation shall be managed by three or more directors who shall be chosen annually by the stockholders at such time and place as may be provided by the by-laws, who shall be stockholders in the corporation." Session Laws of 1880, ch. 91, sec. 7. The fact that he was at the time of his claimed election an executive officer of the Litchfield Savings Society did not qualify him to be chosen a director of that corporation. The statute relied upon for such qualification was enacted in 1876. Session Laws of 1876, ch. 65. This enactment, if it ever did include or was intended to include joint stock trading companies under the general phrase " banks or other corporations" (which is open to grave doubts), had been, so far as it could be so construed, repealed prior to 1885. The joint stock act of 1880 by its seventh section expressly enacts that directors to be eligible as such must be stockholders, and in section twenty-four of the same act it is enacted that " all acts and parts of acts inconsistent herewith are hereby repealed." Session Laws of 1880, ch. 91.

2. But the claim is made that although Mr. Coit was not legally eligible, and therefore not a director *de jure*, yet he was a director *de facto*, and that the law will recognize what he did *colore officii* as valid acts. We have no occasion to deny this principle of law in its proper and wholesome application. We may admit that one who deals with a corporation and contracts with it upon the faith that its directors, who are held out to the public as having the management of its property and affairs, are legally such, ought not to be debarred of his remedy against the corporation for breach of its contract, upon the ground that one or more of its acting directors were not legal directors. The law is

correctly stated to this effect in 2 Morawetz on Corp., §§ 637 to 640. See also *Despatch Line* v. *Bellamy Manf. Co.*, 12 N. Hamp., 205. The doctrine for which the plaintiffs contend is based upon the familiar principle of an estoppel *in pais*, and applies only where that principle can be fairly invoked by third parties who have dealt with the corporation in the faith that its agents had in fact the authority they were permitted to assume and exercise. No such principle can apply in this case. 2 Story Eq. Jur., § 1229; Burrill on Assignments, 4th ed. § 391; *Palmer* v. *Thayer*, 28 Conn., 237.

*Second.* But even if we should concede that Mr. Coit was legally eligible as a director, and that, if not so eligible, yet what he did as acting-director is to be recognized as valid to the same extent as if he had been a legally qualified director, there still remain insuperable objections to the validity of the assignment.

1. The assignment had no validity for the reason that it was made in pursuance of votes passed at a meeting of the directors which was not a legal meeting for that or any other purpose. The purpose of that meeting was one not simply of importance to the proper management of the affairs of the corporation, but vital to its continued existence. Each director was entitled to notice of the meeting, and, in the absence of such notice, no legal action could be taken as to the subject matter upon which that meeting undertook to act. The by-laws did not prescribe what notice should be given for a directors' meeting. The only by-law relating to the subject is that " meetings of the directors may be held as often, at such place, and in such manner, as they may from time to time determine." And it is found that " there was no evidence of any action of the directors under this by-law prescribing the place or manner of holding such meetings, or how often they should be held." In the absence of such a by-law, the law requires personal notice to each director, unless such personal notice is waived by his presence at the meeting. 1 Morawetz on Corp., §§ 481, 531, 532, and cases cited, among them *Stow* v. *Wyse*, 7

Conn., 214. Two of the directors, it is admitted, had no notice of the meeting. It is said that their absence was unavoidable because one was in Montana and the other in South Carolina, and that therefore they were not entitled to notice. If we assume that their presence was a physical impossibility, the joint stock act points out the remedy for such a state of things. If it was assumed by these three directors that such physical impossibility as to the other two would continue for a sufficient time to make the absentees incapable of acting as directors during the period within which action must be taken to effectuate the end contemplated by the board at this meeting, then the act provides that "such directors may fill any vacancies which may happen in their board, for the current year." Session Laws of 1880, ch. 91, sec. 7. But this assumption was not warranted. There was no necessity for holding this meeting on the evening of the very day on which the attachment was made. The end to be thereby reached could just as well have been reached by a meeting of the board held on the first day of March, 1886 (less than sixty days from the attachment), and ample notice thereof could have been given to Mr. Farrel and Mr. Chatfield. Indeed, in these days of annihilated distances, there was no impediment in the way of both these directors, who were absent on the 4th of January, being present at a meeting properly and legally called to be held on the 1st of February, 1886. If we push the plaintiffs' logic a little further, but in the same line of argument, it is not easy to see why upon this theory, if another director had happened to be absent from the state on the 4th of January, 1886, the remaining two could not have held a meeting to put an end to the corporation. The law demanding a majority for a quorum is no more imperative than that demanding notice to each director. But if two directors could so lawfully act, then if all but one were absent, why could not the remaining one, being also secretary of the company, go through the form of sending telegrams to the houses of his co-directors at their different residences, where they would

Chase v. Tuttle.

have been if not absent from the state, hold a meeting on the evening of the same day on which the telegrams are sent, and vote to terminate the existence of the corporation by appointing himself an agent to execute an assignment in insolvency?

2. The assignment had no validity for the reason that it was not made in pursuance of votes passed at a meeting of the directors *called for that purpose.* It has been a matter of serious doubt whether the directors of a corporation charged with the duties of managing the affairs of the company, have the power to commit corporate suicide by an assignment in insolvency. The courts of different states do not agree as to the right answer to be given to that problem. But we are spared the necessity of any discussion of this question, because in this state the legislature has settled it for us by vesting such power in the board of directors. " The assignment [in insolvency] of any corporation may be made by the directors in legal meeting called for such purpose." Session Laws of 1885, ch. 110, § 100. But upon this record it is expressly found that the notice sent to the directors by the secretary for the meeting at which this vote was passed, was "by telegram," and that "there was no evidence that the telegrams contained any notification as to the purpose of the proposed meeting."

LOOMIS, J. This is an action of replevin brought by the trustees of Brown & Brothers, an insolvent corporation, for certain goods that were on the 4th of January, 1886, attached by the defendant as a deputy sheriff, on the suit of the National Shoe & Leather Bank of New York against the corporation. On the evening of the same day an assignment for the benefit of all the creditors of the corporation was made, pursuant to a vote of a majority of its directors, as is claimed, which was lodged on file in the probate court, and subsequently accepted, approved and recorded by that court, and the plaintiffs were appointed and qualified as trustees. The sole defense against this action is that the assignment was invalid and of no effect.

The claimed illegality of the assignment is based upon three objections only. 1st. That two of the five directors, being out of the state at the time, did not receive any notice of the meeting. 2d. That of the three persons who acted as directors in the matter in question, one, namely, Henry R. Coit, was not legally a director though chosen as such, because he was not a stockholder of Brown & Brothers. 3d. That the notices of the meeting sent to the directors did not specify the object of the meeting as required by statute.

1. We do not think the assignment invalid for want of actual notice to the two directors who were at the time absent from the state. Notice was sent by telegram to them as to the others, at their address in this state, but one being in the territory of Montana and the other in South Carolina, they failed to receive the notices. Under these circumstances it would seem unreasonable to hold that a majority of the whole number, being present, could not do a legal act binding the corporation. The exigency demanded immediate action to save the property and to save expense. It is easy to see how disastrous might be the consequences were we to adopt the principle contended for by the defendants. The situation of the absent directors might be much more remote and inaccessible than in the present case, requiring several months to reach them by actual notice. Must the corporation remain paralyzed all this time, without ability to protect itself?

But the suggestion was made in the argument in behalf of the defendants, that it might be treated as a case of vacancy, which the remaining directors could fill, pursuant to the act of 1880. Session Laws of 1880, p. 561, sec. 7. If however the office was vacant as to the two absent directors, then surely the remaining directors could lawfully represent the corporation, for there is no general law or principle requiring vacancies on the board of directors to be filled before the remaining directors can act in the business of the corporation, provided of course the number left is sufficient to constitute a legal quorum. Under our General Statutes, p. 279, sec. 12, " a majority of the directors of any corpora-

tion, convened according to the by-laws, shall constitute a quorum for the transaction of business." In order, probably, to avoid a doubt that might arise, whether a general assignment was such business as was contemplated under the above statute, the legislature by the act of 1885, (Session Laws of 1885, p. 493,) provided that "the assignment of any corporation may be made by the directors in legal meeting called for such purpose." This however was not intended to change the rule as to a quorum under the preceding statute. There can be no doubt that a majority of the directors could make a valid assignment.

2. But this brings us to the second objection, that Henry R. Coit, one of the three who participated in making the assignment, was not a lawful director, and therefore the attempted assignment was made by only two directors. It is conceded that Coit was regularly appointed to the office and that he was at the time a director *de facto*, but the contention is that he was not eligible to the office because he was not a stockholder of the Brown & Brothers corporation. In behalf of the plaintiff it is earnestly contended that the acts of Coit as a *de facto* director are perfectly valid, and cannot be questioned except once for all in a direct proceeding to oust him from the office, as upon a *quo warranto.* On the other hand the counsel for the defendants contend that the principle applies only where there exists the element of an estoppel *in pais*, that is, where third parties have dealt with the corporation on the faith that its directors and agents had in fact the authority they were permitted to assume and exercise; but that the corporation itself could not invoke the aid of the same principle in support of the validity of its own acts which have affected the rights of third parties, because the corporation could not have been misled. We have no occasion to settle this interesting question, because we think Coit was a director *de jure*.

While we concede that he was not a personal stockholder of Brown & Brothers, yet by representation he was a stockholder; that is, he was secretary, treasurer and managing director of the Litchfield Savings Society, which was at

the time of his appointment a lawful stockholder in the corporation of Brown & Brothers. At any rate he was eligible to the office of director under the act of 1876, (Session Laws of 1876, ch. 65,) which provides that " any one of the directors or executive officers of any corporation, incorporated by the laws of this state, owning stock in any of the banks or other corporations of this state, shall be eligible to be elected as a director of° such banks or other corporations, legally convened for the election of directors, and upon such election may act as director of such bank or other corporation."

But the claim is made that this provision was repealed by the seventh section of the new joint stock act of 1880, (Session Laws of 1880, p. 561,) which, in providing that the affairs of every joint stock corporation shall be managed by three or more directors, adds—" who shall be stockholders in the corporation."

There is no express repeal of the first mentioned act, and the implication is strongly against it from the fact that certain specific provisions of former statutes are mentioned as ·repealed while the act of 1876 is not mentioned. Then, in connection with the general repealing clause of acts inconsistent, there is a saving among other things of any rights acquired under existing laws. The right of a savings bank whose assets are invested in another corporation to have a voice in directing its affairs, is surely of great importance and value. The record does not tell us whether this investment of the Litchfield Savings Society existed when the 'act of 1880 was passed. We refer to this now to show the spirit and purpose of the legislature in carefully guarding all important rights and interests. There is no reason why in 1880 they should have desired or designed to repeal the wise and just provision of 1876. Nevertheless the counsel for the defendants insist that, however wise and just, it must be swept away by the act of 1880, because it is so inconsistent with it that both cannot stand and operate together. We answer that both did stand and operate together for the period of four years at least, from 1876 to 1880, for it is to be borne in mind that the provision referred

to in the act of 1880 was not new, but merely continued in force an old provision found in the General Statutes of 1875, p. 312, sec. 1, and in the statutes long before that. When the joint stock act was re-enacted in 1880 with some new provisions, it seems unreasonable to suppose that by the mere retention of the old provision in the same language, it could have been intended to give it a force and effect so much greater than it had for the four years preceding. The remedial nature of the acts in question and the reasons for their enactment will justify us in construing one as explaining and qualifying the other. While it is true that only stockholders are eligible, the necessary implication is that all stockholders are eligible, but inasmuch as the savings bank in its corporate capacity could not well act as a director in another corporation, its executive officer or chief manager is the stockholder within the meaning of the two acts under consideration. In reaching the result that the provision of 1876 has not been repealed we are glad to be supported by the new revision of the statutes which goes into effect in 1888. In that revision the act of 1876 is retained in section 1922, while the provision of 1880 is also found in section 1950.

3. The only remaining objection is, that the meeting of the directors for the making of the assignment was illegal for defects in the notice. The only by-law or rule adopted relative to the matter prescribed simply that "meetings of directors may be held as often, at such place, and in such manner, as they may from time to time determine." No formality whatever is prescribed, and if all the directors happened to be together and agreed to hold a meeting immediately for a particular object within their jurisdiction, we do not see how their action could be impeached on that ground. As the want of actual notice to the two directors who were absent from the state, at places so remote that they could not be reached, has been excused in this case, all the directors capable of acting under the circumstances were present.

But it is said that the statute which empowers directors

to make an assignment requires that " the meeting be called
for such purpose," and in this connection the defendants
rely on the finding, which says that " there was no evidence
that the telegram contained any notification as to the pur-
pose of the proposed meeting." It will be observed that
this is not a finding that the purpose was not specified, but
only that the contents of the telegram had not been proved
by either party; but under the circumstances we are about
to mention, the burden of showing that the object was not
specified was on the defendants. The record of this meet-
ing is annexed as part of the finding and it says :—" At a
special meeting of the directors of Brown & Brothers,
*called for the purpose of making an assignment* of its estate
in insolvency for the benefit of all the creditors pursuant to
the statutes," etc.

Upon this record, until the contrary is found, it must be
presumed that the purpose was specified in the call. This
principle is sustained by the case of *Sargent* v. *Webster*, 13
Met., 504, where the validity of an assignment by a corpora-
tion for the benefit of creditors was sought to be impeached
for want of notice to all the directors. SHAW, C. J. dis-
posed of the objection as follows :—" Another objection of
the same kind is, that it does not appear that notice of
the meeting was given to all the directors. But the con-
trary does not appear; and it would be hazardous to decide
that every vote passed by an aggregate body is void if it do
not appear by the record that all were notified. We believe
it is not usual in corporate records to state how the members
were notified. The presumption, *omnia rite acta*, covers
multitudes of defects in such cases, and throws the burden
on those who would deny the regularity of a meeting for
want of due notice, to establish it by proof."

Our own court in *Lane* v. *Brainerd*, 30 Conn., 565, ap-
plied the same principle both to directors' and to stockhold-
ers' meetings. The mere record of the meeting in the former
case was presumptive proof that all the directors had been
duly notified, and in the latter case the mere record of the
organization of a corporation was presumptive evidence of a

fact which was an indispensable condition precedent to its lawful organization.

We advise judgment for the plaintiffs.

In this opinion the other judges concurred.