### *In re* NEWCOMB *et al.*

(*Supreme Court, Special Term, Cattaraugus County.* November, 1891.)

1. RIGHT TO JURY TRIAL—CONSTITUTIONAL LAW.
Const. U. S. Amend. 7, providing that in suits at common law, where the value in controversy shall exceed $20, the right to trial by jury shall be preserved, applies only to the legislation of congress, and not to that of the states.

2. SAME—SUMMARY PROCEEDINGS.
Const. 1846, art. 1, § 2, which provides that the trial by jury, in all cases in which it has been heretofore used, shall remain inviolate forever, does not apply to a summary proceeding to test the validity of a corporate election, provided for by Rev. St. pt. 1, c. 18, tit. 4, § 5, as that section of the Revised Statutes was enacted in 1825.

3. RAILROAD COMPANIES—ELECTION OF DIRECTORS.
Under 2 Rev. St. (6th Ed.) p. 520, § 5, relative to railroad companies, requiring that stockholders voting for directors shall own the shares voted upon 30 days before the election, and forbidding any stockholder from being elected a director unless he is qualified to vote for directors, a person elected to such office 10 days after acquiring ownership of stock does not become even a *de facto* director.

4. SAME—IRREGULARITY.
At an election for 13 directors of a railroad company, the inspectors returned with a statement of the votes, and announced that there was a tie in the votes for one director. The stockholders then learned that four ineligible stockholders had received a majority of votes, and, before the inspectors made any formal report of the election, adjourned. At the adjourned meeting a new election was had in regular form. *Held,* that the first election was incomplete, and the second election was regular.

5. SAME—RIGHT OF STOCKHOLDERS TO VOTE.
Laws 1880, c. 510, § 2, provides that it shall not be lawful for any person to vote at any meeting of stockholders of any railroad corporation for the election of directors upon any stock where the certificates thereof shall not be in the possession or under the control of the person voting, or such person shall have ceased to retain the title to the stock. *Held,* that the sale of an option for the purchase of shares within two years, under an agreement that the owner is to retain the right to vote, does not divest the title of the original owner, or deprive him of the right to vote, though the shares are deposited subject to the option.

Application of Isaac B. Newcomb and others to set aside an election of directors of the Allegheny & Kinzua Railroad Company. Denied.

*C. Walter Artz* and *Frank Sullivan Smith,* for petitioners. *Charles S. Cary, Frank Rumsey,* and *George L. Roberts,* for respondents.

DANIELS, J. The annual election of the Allegheny & Kinzua Railroad Company was required to be held for the year 1891 on the 10th day of February, at the village of Olean. And on that day the owners of nearly all the stock of the company, either personally or by proxy, appeared at the office of the company, to conduct an election for 13 directors for the ensuing year; and that number of persons was voted for. But as to one of the candidates

the vote was a tie between himself and two others; but as to the 12 a majority vote was given for those claimed on behalf of the applicants to have been thereby elected directors of the company. This, however, was denied by the persons claiming to be the owners of the majority of the stock; and, without any announcement or declaration of the result by the inspectors of the election, a motion was made for an adjournment until 8 o'clock in the evening of the day on which the election was held. An amendment to that motion was proposed and carried, by which the adjournment was ordered until the 14th day of February, 1891, at 1 o'clock in the afternoon; and at, or soon after, that time an election was held, by which it is claimed that 13 directors of the company were regularly elected, and entered upon the discharge of the duties of their respective offices. The legality of this election has been denied on behalf of the moving parties, consisting of seven persons claiming to have become directors of the company under the election of the 10th of February, and they have moved, under the provisions of the statute, to set aside the election of the 14th of February because of this alleged illegality. The provisions of the statute upon this subject, creating and providing for a summary proceeding to set aside a corporate election, are contained, as they are applicable to this proceeding, in section 5, tit. 4, c. 18, pt. 1, of the Revised Statutes. And it has been objected on the part of the respondents that this section of the statute, so far as it may deprive the parties of a trial by jury, was enacted in violation of the constitution of this state and of the United States. The only provision which it is assumed to conflict with in the constitution of the United States is that contained in article 7 of the first amendments made to the constitution, which declares that in suits at common law, where the value in controversy shall exceed $20, the right of trial by jury shall be preserved. But it is sufficient to answer this part of the objection that the provisions contained in these amendments are applicable alone to the legislation of congress, and in no way apply to that of the states; and this is particularly so as to this amendment of the constitution. *Spies* v. *Illinois*, 123 U. S. 131, 166, 8 Sup. Ct. Rep. 21.

And the objection that the enactment conflicts with the constitution of New York is equally unfounded. The provision with which this conflict is supposed to have been created is contained in section 2 of article 1 of the constitution of 1846; and that provides, as the preceding constitutions of the state did, that the trial by jury in all cases in which it has been heretofore used shall remain inviolate forever. But this provision of the constitution has no application to the proceeding created and regulated by this section of the statute, which was enacted in the Laws of 1825, p. 451, § 9. As it has been made a part of the Revised Statutes, proceedings have been taken and maintained under it without the slightest objection that it stood in the least degree in conflict with the constitution, and its authority was invoked and enforced certainly over 50 years ago. *Ex parte Long Island R. Co.*, 19 Wend. 37; *People* v. *Tioga Common Pleas*, Id. 73. And in considering other statutes of a similar character, so far as they provided for the disposition of legal controversies by summary proceedings, it has been held that the statutes enacted prior to the adoption of the constitution in 1846 do not create any conflict of this description. *Sands* v. *Kimbark*, 27 N. Y. 147. And the notice required to be given was due process of law. *Kennard* v. *Louisiana*, 92 U. S. 480; *Foster* v. *Kansas*, 112 U. S. 201, 5 Sup. Ct. Rep. 8, 97. There is, therefore, no foundation in either respect for this objection to stand upon. The question as to the validity of the election held on the 14th of February is consequently presented for decision by this proceeding.

Each of the elections in controversy was held under the authority of section 5 of the act of 1850, relating to railroad corporations. 2 Rev. St. (6th Ed.), p. 520, § 5. In the election held on the 10th of February, 1891, a majority of the votes were given for twelve persons; and at the election held on the

14th of February, 1891, eight of the same persons received a majority of all the votes of the shareholders of the company; and from that circumstance it results that the election of the 14th of February, to that extent certainly, cannot be set aside. If the election on the 10th of February was regular, then these eight persons were elected at that election, and formally electing them again on the 14th certainly did not have the effect of invalidating their title to the office of directors. After the close of the election held on the 10th of February, the persons claiming to be elected as directors appointed Theodore C. Woodbury to the office of the thirteenth director, which was in no manner supplied in form by the election. This they evidently had no authority to do, for the reason that the first article of the by-laws of the corporation permitted the remaining directors to supply a vacancy in the board only in cases where it was caused by death, resignation, removal, or refusal to serve, which did not include the case of this thirteenth director. But it is not important specially to consider this subject, for the reason that the same person was elected a director of the company in the election of the 14th of February; and that is sufficient to maintain the right of nine of the directors held at that election to the offices for which the votes of a majority of the stockholders were given for them, leaving but four of the directors whose election could be in any respect brought in controversy or affected in the least degree by this proceeding. In the election on the 10th of February, Rockwell, Blair, Hastings, and Wilson received a majority of the votes given for directors at that meeting of the stockholders. In their favor the votes of a minority of the shareholders were cumulated under the authority of the constitution and laws of Pennsylvania. These were asserted to be applicable to this company for the reason that it was created by a consolidation of a New York and Pennsylvania railroad company. But while the articles of association creating this consolidation, and the by-laws of the company, as well as the act of 1850, to which reference has already been made, declared that each stockholder should have but one vote for each share of stock, it still is not necessary to consider the question whether the laws and constitution of the state of Pennsylvania, so far as they contain this provision, were applicable to this consolidated company, for the reason that it appears that Spencer S. Bullis and Mills W. Barse, who controlled the majority of the stock of the company, voted in favor of these four persons for directors. And by those votes these persons could have been elected to the office of directors independently of the cumulated voting in their favor, if they were eligible for the office of directors, and the election was not only legally held, but in fact completed. The two persons owning the majority of these shares, and voting for these four persons, however, state that they did so upon the assurance of Mr. Wilson, the secretary of the company, that they were shareholders in the company, and entitled to vote at the election; while it now appears that these four persons became shareholders for the first time on the 31st of January, 1891, 10 days only prior to the holding of the election. And section 5 of the act of 1850 required that the persons voting at an election for directors of the company should own the shares voted upon 30 days previous to the election; and then the statute proceeded to forbid any person being elected to the office of a director "unless he shall be a stockholder owning stock absolutely in his own right, and qualified to vote for directors at the election at which he shall be chosen." This was a distinct prohibition applicable to these four persons, by which they were not only rendered ineligible, but their election was positively forbidden; and there is certainly good reason for inferring the intention of the legislature to have been in this enactment to render the votes inoperative which should be given for persons whose election was in this manner prohibited. In *Rex* v. *Sanchar*, 2 Show. 67, the statute declared the election then in controversy to be void, and it was held that the corporation was entitled to elect another person to the office for which the individual had

been elected in violation of the statute, without resorting to any proceeding whatever to remove him from that office; and this seems to be an authority in favor of the construction already suggested for this provision of the statute. It is true that in *Rex* v. *Bridge*, 1 Maule & S. 76, the incumbent was ineligible by reason of his not having taken the sacrament within the time prescribed by law, which fact was considered to be insufficient to render the election void. And *Chase* v. *Tuttle*, 55 Conn. 455, 12 Atl. Rep. 874, sustains this view. But the statute of this state has been so framed as apparently to require a stricter construction; and to hold that the person voted for in violation of its provision may still be a *de facto* director would seem to be a substantial repeal of so much of the statute, for it has directed that no person shall be a director unless he is qualified in the manner mentioned in the act; and the court has no authority, apparently, to declare that he shall be a director in violation of this provision. And if this statute rendering these four persons ineligible to the office of director is to be construed and applied in this manner, then these four persons were not elected, and there was no obstacle in the way of electing four others, as that was done, in their place, by the election of the 14th of February.

To maintain the election held on the 10th of February it has been stated in the petition, which is the foundation of this proceeding, and in affidavits produced, that the three inspectors of election reported in favor of the election of the twelve persons claimed to have been elected by the petition. But this fact has been controverted by the answer of the respondents, and they have stated the fact to be that, after the votes had been given, the three inspectors retired into an adjacent room, and finally returned with the statement which they had made of the votes, and which has been produced upon the hearing of this application, and then informed the shareholders that there was a tie in the vote of the twelfth director, and that brought the attention of the persons present to the names of the individuals who had been voted for as directors, and it was asserted then that the vote had been in violation of an understanding or agreement arrived at with the parties representing the minority of the stockholders as to the persons who should be elected directors of the company for the coming year. On the part of the petitioners it has been asserted that when the inspectors of the election returned they reported in favor of the election of the 12 persons voted for by the stockholders, who were identified with the moving parties, and that these persons were stated to have been elected the directors of the company. But this has been positively denied on behalf of the respondents, their statement being that when this condition of the vote was exhibited they objected to it, and declined to proceed further until counsel could be consulted, and for that reason proposed to adjourn until 8 o'clock in the evening of that day, when, conformably to the amendment already mentioned, the meeting was adjourned until the 14th of February. Upon this subject the three inspectors of the election were examined in the reference ordered in the case of *Byrne* v. *Bullis*, and their evidence has been presented for consideration in the disposition of this motion. Two of them have made affidavits, and from the affidavits and the testimony of the three inspectors it appears that no report concerning the election was made or subscribed by them at the time when they returned and exhibited the condition of the votes to the shareholders, and that before they made any report, or subscribed the statement containing an account of the votes, this motion was made to adjourn, and the adjournment had been carried, and that it was at the instance of Mr. Rockwell after that had been done that they subscribed the statement made by them of the votes which had been given. Over this statement is written, in apparently a different handwriting, these words: "The following is a report of the vote cast on ballot for directors." But their testimony is that this was not written upon the paper at the time they subscribed it at the instance of Mr. Rockwell, and that it was

not returned by them as a report to any officer or stockholder of the company, but was left lying upon the table where they subscribed it as a mere statement, and from which it seems to have been taken by the secretary of the company, and afterwards passed over by him to Mr. Barse. These facts, as they are authenticated by the testimony of the three inspectors, very clearly show that no completed election took place on the 10th of February, 1891, but that they were in doubt as to what should be done by themselves, and therefore returned with this statement, which they exhibited to the assembled shareholders. If they had reported that the persons receiving the majority votes had in fact been elected, and this adjournment had not been previously ordered, then a different question would be presented on this part of the case. But they did not do that. The most they did was to return their statement to the meeting for further consideration, and the result of that consideration was an adjournment of the meeting until the 14th of February. This left the election in an incomplete condition. The votes, it is true, had been cast upon which the inspectors might have declared the result. But they wholly failed to do that, and with the acquiescence of the shareholders took no further action for the purpose of consummating the election. In this respect, as well as in others, the facts are presented differently from those which were made to appear upon the motion for the continuance of the injunction in the case of *Byrne* v. *Bullis;* and what was there said concerning this election has no application to this proceeding, for, instead of an election being completed, as was then shown to be the fact, the election of the 10th of February was not completed, and no final action was taken upon it by the inspectors before the meeting was adjourned. And the object of that adjournment probably was, as it has been stated in the affidavits of the respondents, Barse and Bullis, to bring the election up for further consideration and action on the 14th of February. And under these circumstances it was a subject open for further consideration of the shareholders at the time to which their meeting was in this manner adjourned. On that day a formal vote was taken by some of the parties to adjourn the meeting. But this does not appear to have had such a measure of concurrence as would render that action legal and valid. But shortly after the hour of 1 o'clock, or certainly not later than 2 o'clock, of the 14th of February, the formal election did take place, resulting in the majority of votes being given for the 13 persons who were then declared to be elected directors, and that was the first authoritative declaration that was made, as the result of either election, that any persons had been elected as directors of the company. In this election Bartlett, Cary, Widenfeldt, and Byrne are the four persons who appear to have been elected in place of Rockwell, Blair, Hastings, and Wilson, and their eligibility to the office of directors of the company has in no manner been successfully impeached. But so far as the proceedings appear to have been taken, and under the authority of this adjournment, they seem to have been regular, and in compliance with the by-laws, as well as the articles of consolidation, and the statute defining the qualifications of the voters. And their election cannot legally be set aside to install ineligible persons in their places, when the statute has forbidden their election at all.

It has, however, been stated that the respondents Bullis and Barse, by whose votes this ticket was elected, had parted with their stock, and therefore were not in a condition to use it as the authority for the votes given by them at the election. This objection is made upon the effect of chapter 510 of the Laws of 1880, which, by its second section, declares it shall not be lawful for any person to vote, or to issue a proxy to any other person or persons to vote, at any meeting of stockholders or bondholders, or of stockholders and bondholders, of any railroad corporation in this state, for the election of directors, or for any other purpose, upon any stock or bonds, where the certificates for said stock or the said bonds shall not be in the possession or

under the control of the person in whose behalf the vote is to be given, and such last-mentioned person shall have ceased to retain the title to the stock represented by such certificates or said bonds as owner in his own right, or in his capacity of executor, etc.    To deprive the stockholder of the right to vote, this section of the statute requires the existence of two facts: *First*, that the stock shall not be in the possession or under the control of the person in whose behalf the vote is given; and, *second*, that such person shall have ceased to retain the title to the stock represented by the certificates; while the proof given to affect the right of these persons to vote has failed to establish the fact that they had ceased to retain the title of the stock upon which their votes were given, for by the agreement made by the respondents Bullis and Barse no more than an option was given Newcomb & Co. for the purchase of these shares within the period of two years from the date of the agreement, which was made on the 13th of March, 1890.    And that option, although the shares were deposited pursuant to it, to be held subject to the option, did not divest the persons giving the option of their title to the shares; and so much seems to have been considered in making the agreement itself, for by subdivision 4 of article 1 it was provided that the said parties should at all times retain the right to vote these shares at all meetings of the stockholders of the company.

It was also objected that the respondent Barse had parted with his interest in the shares in favor of the respondents Bullis and McNeil, and it does appear that an agreement was entered into by which the respondent Barse was to sell and dispose of his interest in these shares of stock.    But it is positively stated by both the respondents Bullis and Barse that it was agreed that the title and control of the shares should remain in Barse until Bullis and McNeil should pay certain moneys and perform certain obligations which they had not yet done, and that the title to the stock, therefore, continued to remain in Barse.    This statement seems to have presented the facts as they were in reference to the sale of the interest of the respondent Barse in the majority of the shares of the company, and the facts were such as, under the statute, not to deprive him of the right to vote, as he did, upon the shares at each of these elections.    An injunction was issued in the suit of Byrne against the railroad company and the owners of the majority of these shares, forbidding an election to be held on the 14th of February.    And it is stated generally in the affidavits that this injunction was served prior to the time when that election was held, and, if that fact had been established by the affidavits, as it was in another proceeding, there may have been sufficient ground for setting aside this election as being held in violation of the restraint of the injunction.    But those affidavits have not been made a part of the proof in this proceeding.    Neither has it been shown that the injunction was in fact served upon either of the persons interested in the majority of these shares in such a manner as to deprive the election of its legal effect.    It has been stated generally that the injunction was served, and was duly served; but those are mere inferences from facts which have not been made to appear, as they should be, to work a result of this description.    If the injunction had been served in such a manner as to deprive these persons of the right to proceed with the election, the particulars required to be observed in making a legal service of the order should have been shown by the affidavits.    But that has not been done, and on the part of the respondents it is denied that any such service of the injunction had been made; and there is no reason, accordingly, in this part of the case which will justify the setting aside of this election as being held in violation of the injunction.    But as the facts have now been exhibited the election of the 14th of February appears to have been regular, and the motion to set it aside will accordingly be denied; but, inasmuch as the effort of each party has been to overreach the other, the denial will be without costs.