BOYNTON *v.* ROE.

1. CORPORATIONS—ASSIGNMENTS FOR BENEFIT OF CREDITORS.
    An insolvent corporation has the right, unless prohibited by its
      charter or by statute, to make a general assignment of its
      property for the benefit of its creditors.

2. SAME—AUTHORITY OF DIRECTORS.
    The directors of the corporation may make the assignment in
      such case without the assent of the stockholders.

3. SAME—VALIDITY OF ASSIGNMENT—PRESUMPTION.
    An assignment by a corporation for the benefit of its creditors,
      duly executed and filed, is *prima facie* valid, and the burden
      of proving its invalidity rests upon him who asserts the same.

4. SAME—ISSUE—INSUFFICIENT EVIDENCE.
    The testimony of one of the directors of an insolvent corpora-
      tion that he was not notified, as he knew of, of a meeting of
      the directors at which an assignment for the benefit of cred-
      itors was made, but that he was at one meeting, is insuffi-
      cient to raise the question as to whether it was necessary to
      the validity of the assignment that all the directors should be
      present at the meeting at which it was executed.

5. SAME—RIGHT OF ASSIGNEE TO SUE.
    The assignee of a corporation for the benefit of creditors may
      recover from a stockholder for goods wrongfully converted
      prior to the assignment, since under section 8739, 3 How.
      Stat., the assignee takes by the assignment all non-exempt
      property of the assignor, and all its rights, legal or equitable,
      114 MICH.—26.

and section 8741 provides that the assignment shall confer the right to recover all property, or rights or equities in property, which might be reached by any of the assignor's creditors.

6. SAME—TRANSFER OF ASSETS—DIVISION OF SURPLUS—WAIVER.

A stockholder in a corporation, who took in a new corporation, to which the assets of the former were transferred, stock equal in amount, without insisting upon a claim, which he advanced, but to which the other stockholders of the new corporation refused to accede, that the surplus of the old corporation should not be carried over to the new, but should be divided among the stockholders, has no valid claim against the new corporation, on account of such surplus, which will justify him in converting corporate assets to his own use after the new corporation has become insolvent.

7. SAME—TROVER—CUSTOM AMONG STOCKHOLDERS—EVIDENCE.

In trover by the assignee of a corporation for the benefit of creditors against a stockholder for corporate property of the value of $5,000, converted by defendant to his own use after the corporation had become insolvent, one of the stockholders testified that he had a credit upon the books for loans to the corporation, in settlement of which he had taken out moneys at different times, and another stockholder testified that he had taken out small amounts upon various occasions, never to exceed $500, which were properly charged to him, but that these occasions were nearly all prior to the time that the corporation became financially embarrassed. *Held*, that the evidence was insufficient to justify a submission to the jury of the question whether there was a custom among the stockholders which made it lawful for defendant to take the property.

Error to Wayne; Donovan, J. Submitted June 11, 1897. Decided September 23, 1897.

Trover by Herbert E. Boynton, assignee of F. G. Smith Sons & Co., against Charles Roe, Jr. From a judgment for defendant, plaintiff brings error. Reversed.

*Wells, Angell, Boynton & McMillan,* for appellant.

*Atkinson & Atkinson,* for appellee.

LONG, C. J. In 1880 the corporation of M. S. Smith & Co. was organized with a capital stock of $75,000,

divided into 3,000 shares of $25 each.   M. S. Smith sub-
scribed for 200 shares.   The balance was divided among
Frank G. Smith, E. J. Smith, John S. Wood, and de-
fendant, Roe.   Roe subscribed for 360 shares, giving his
note to M. S. Smith for $9,000, and left his stock with Mr.
Smith as collateral to the note.   On this note, from time
to time, he applied the dividends to which his stock was
entitled, until he had paid $5,000, and had received from
Mr. Smith certificates for 200 shares of the stock.   Roe
did not pay the balance of the note, and never received
the remaining shares.   He testified in the present case
that he had a distinct recollection that the note was re-
turned, and that he considered his obligation on it can-
celed.    The corporation continued in business until
February 11, 1889.   At this time the stock interest of
E. J. Smith and Mr. Wood had passed into the hands of
F. G. Smith or M. S. Smith, and these two, with the
defendant, were the only stockholders.   Upon this day, a
new corporation, called F. G. Smith Sons & Co., composed
of Frank G. Smith and his sons, Frank G. Smith, Jr., G.
L. Smith, and Martin S. Smith, Jr., and the defendant,
Roe, nephew by marriage of F. G. Smith, was formed.
The transfer from the old corporation to the new was
made as follows:   A resolution was passed by the old
corporation that the assets and property of the corpora-
tion, of every kind and nature, be transferred to the new
corporation, upon such terms and conditions as should be
agreed upon, and the president was authorized to execute
the necessary papers for the transfer.   On the same day,
a meeting of the stockholders of the new corporation was
had.   They subscribed all of the stock, and F. G. Smith,
Jr., was authorized by resolution to enter into an agree-
ment with the old corporation for the purchase of the
property.   The agreement was entered into and reported
back to the stockholders on the same day, as follows:

"I respectfully report that I have entered into an
agreement with M. S. Smith & Co. for the purchase
of its property and assets, of every kind and nature, for

the sum of $75,000, and to assume and pay all outside liabilities of said M. S. Smith & Co."

This purchase was confirmed by resolution of the stockholders. After the adoption of the resolution, the new corporation took over all the property and assets of the old corporation, and continued business at the same store. F. G. Smith was made president, and the defendant secretary, of the new corporation, as he had been of the old. The capital stock of this corporation was $75,000, the same as the old. The defendant became a subscriber for 200 shares. M. S. Smith no longer held any stock. The three sons of Frank G. Smith took the stock formerly held by M. S. Smith, and F. G. Smith still held the controlling interest in the new corporation. It appears that the business of the new corporation did not continue profitable, and in the month of November, 1893, it executed and delivered to Robert R. Howard, as trustee, a chattel mortgage covering all its property and assets, to secure certain creditors in an amount of upwards of $70,000. A large number of creditors, representing a large amount of indebtedness, were not secured by this mortgage. The business was continued by the corporation after this mortgage was given, until the 17th day of March following, when it made an assignment. It was shown by the testimony of Mr. Howard that, as trustee under the mortgage, he took possession of the property on March 17th. The mortgage was foreclosed in chancery in that month, and on the foreclosure more than enough was realized by the trustee to pay the indebtedness covered by the mortgage. The surplus was taken by Boynton as assignee. Since that time one dividend has been paid to creditors, and the assignee has in his hands some $5,000 or $6,000, but not enough to pay the unsecured creditors in full; and it is alleged that, if the amount which is now claimed against the defendant were added, it would not be enough to pay the unsecured creditors in full.

The claim in the present case against the defendant is in trover, and was instituted to recover the value of certain

watches, diamonds, and jewelry of the retail price of $5,625, taken by him from the plaintiff's assignor, as it is claimed, on the 9th day of February, 1894, about noon, while Mr. F. G. Smith and F. G. Smith, Jr., were away from the store; that the defendant took them out of the case, made a slip for them, directing that they be charged to his account, and left the slip on the bookkeeper's desk; that, soon after he had taken them, it was ascertained by the two Smiths, and the officers of the corporation were called together, and a resolution passed disaffirming the action of the defendant in taking the goods, directing that a demand be made for their return, and authorizing the president of the corporation to take proceedings for their recovery. A demand was thereafter made upon the defendant, and he refused to return the goods. This suit was thereafter commenced.

On the trial in the court below, the defense set up was that, at the time the assets and property of the old corporation were transferred to the new, the inventory of the old showed a surplus of between $35,000 and $40,000; that the defendant stated at the time of the transfer, both to F. G. Smith and F. G. Smith, Jr., that this surplus should be divided, and not transferred to the new corporation; that he considered he had helped earn the surplus, and did not think it right that Mr. Smith's sons should come into the concern on the same basis he stood, after service to the company of a great many years. He testified that both F. G. Smith and F. G. Smith, Jr., refused to accede to his views at the time the transfer was made, and that he took the goods in controversy in this suit for the purpose of evening up that claim for surplus. He also claimed that F. G. Smith and F. G. Smith, Jr., had taken goods from the store, and had them charged to their accounts. At the close of the testimony in the case, plaintiff's counsel asked the court to direct the jury that their verdict must be for the plaintiff. This was refused. The jury returned a verdict in favor of the defendant.

The plaintiff's contention is that the court was in error

in refusing to direct a verdict in his favor. In answer to this, the defendant contends:

1. That the pretended assignment is a nullity, for the reason that the company's by-laws provide for five directors, and that on March 17th, when Mr. Boynton claims to have been made assignee, there were only three directors, F. G. Smith, F. G. Smith, Jr., and defendant; that no meeting was called, and no notice given to defendant, but that the two directors F. G. Smith and F. G. Smith, Jr., met, and attempted to make an assignment for the company; that this action was a nullity, and did not transfer the property of the company to the plaintiff.

2. That the directors of a stock company like this cannot make an assignment of the company property.

The assignment was in form an ordinary common-law assignment, dated March 17, 1894, and was executed by F. G. Smith Sons & Co., through its president and secretary, and had attached thereto the corporate seal. It was duly witnessed. The assignee's acceptance was duly indorsed thereon March 19th, and filed in the office of the county clerk on March 22d. It covered all the property and assets of F. G. Smith Sons & Co. It appears that there was a meeting of the directors held March 17, 1894, at which time the assignment was made. It is contended by counsel for the defendant that this assignment is void, for the reason that it was authorized to be made at a meeting when only two of the five directors were present. In this contention we think counsel in error. The record shows that prior to that time the directors were F. G. Smith, F. G. Smith, Jr., and Charles Roe, the other two having resigned, because they had transferred their stock. Thereafter Mr. H. F. Baker was duly elected a director. Whether Mr. Roe was present or not at the time when the assignment was made is not stated in the record. All that is contained in the record on that subject is from the testimony of the defendant. He testified: "I was not notified, as I know of, of a meeting of the directors at which the assignment of the business of that company was to be made. I was at one meeting." The record shows

that F. G. Smith, F. G. Smith, Jr., and H. F. Baker were present, and they constituted a majority of the directors.

It is well settled in this State that an insolvent corporation has the right to make a general assignment of its property for the benefit of its creditors, unless prohibited by its charter or a statute of the State. *Covert* v. *Rogers*, 38 Mich. 363 (31 Am. Rep. 319); *Richardson* v. *Rogers*, 45 Mich. 591. The directors may make such assignment for the benefit of creditors without the assent of the stockholders. *Hutchinson* v. *Green*, 91 Mo. 367; *De Camp* v. *Alward*, 52 Ind. 473. Under our statute, the business affairs of the corporation were under the control of the board of directors. The board of directors had the power to make the assignment. Whether it was necessary that all the directors should be present at this meeting in order to make a valid assignment, it is not important to inquire. If such claim was made by the defendant on the trial below, it does not appear in this record. He says he was present at one meeting. Whether it was the meeting when the assignment was finally executed, or at a meeting when it was agreed by the board to take this action, does not appear. The assignment was offered and received in evidence without objection on the trial. It was shown to be duly executed, had upon it the corporate seal, and the trust was accepted in writing by the assignee. It was filed in the office of the county clerk, and the assignee has been active in carrying out the trust since that time. In some States it is held that a majority of the directors may make an assignment of the corporate property for the benefit of creditors. *Buell* v. *Buckingham*, 16 Iowa, 284 (85 Am. Dec. 516), and cases there cited; *Chase* v. *Tuttle*, 55 Conn. 455 (3 Am. St. Rep. 64). We need not pass upon that question here. The assignment was *prima facie* valid, and the burden was upon the defendant to prove its invalidity. As was said by Shaw, C. J., in *Sargent* v. *Webster*, 13 Metc. (Mass.) 504 (46 Am. Dec. 743):

"Another objection is that it does not appear that notice of the meeting was given to all the directors. But the contrary does not appear; and it would be hazardous to decide that every vote passed by an aggregate body is void if it do not appear by the record that all were notified. We believe it is not usual in corporate records to state how the members were notified. The presumption *omnia rite acta* covers multitudes of defects in such cases, and throws the burden upon those who would deny the regularity of a meeting for want of due notice to establish it by proof."

In *Chase* v. *Tuttle, supra*, it was held that the assignment was not invalidated for want of actual notice to two of the directors, who were absent from the State, a quorum of the board being actually present, and authorizing the act. We think there was no showing by the defendant in the present case which would warrant us in holding the assignment invalid.

In this proceeding we must therefore treat the assignment as having been lawfully made, conveying all the rights and properties of the corporation to Mr. Boynton, assignee. The assignee therefore had the right to bring suit for the wrongful taking of the property, even where the property was taken before the assignment was made. The right of action for a wrong is assignable, and passes with the rest of the assignor's rights to the assignee for the benefit of creditors. Section 8739, 3 How. Stat., provides that "such assignment shall convey to the assignee all property of the assignor not exempt from execution, and all rights, legal or equitable, of said assignor;" and section 8741 further provides: "Every such assignment shall confer upon such assignee the right to recover all property, or right or equities in property, which might be reached or recovered by any of the creditors of such assignor." It has been repeatedly held by this court that a right of action for the conversion of property is assignable. *Final* v. *Backus*, 18 Mich. 218; *Brady* v. *Whitney*, 24 Mich. 154; *Grant* v. *Smith*, 26 Mich. 201; *Smith* v. *Thompson*, 94 Mich. 381. And, under this statute, a

corporation may make an assignment, the same as a private individual.

But it is contended that the defendant had a valid claim against the assignor, F. G. Smith Sons & Co., when he took the goods. It appears that, when M. S. Smith & Co. sold out and transferred its rights to the new corporation, defendant had in it 200 shares which were fully paid up, and no more. The certificate for 360 shares of the old corporation which had been issued to him was in the hands of Mr. Smith. Defendant paid $5,000, and had received from Mr. Smith 200 shares. He does not claim to have paid for the other shares. The old corporation was organized with a capital stock of $75,000, or 3,000 shares at $25 each. Defendant's interest in that corporation was simply the 200 shares. When the new corporation was organized, it was capitalized at the same amount, defendant's interest in it being 200 shares. The other 160 shares which were held by M. S. Smith were turned over to the sons of F. G. Smith. While defendant claims that he had some talk with F. G. Smith about this, and made some claim to a surplus which he alleges was carried over into the new corporation, yet it is apparent. that he acquiesced in the formation of the new corporation, and took his interest in it at 200 shares. No member of the firm took any part of this surplus. It is conceded that, after the new corporation was formed, the goods were marked down; and, in the course of time, it is apparent that whatever surplus there might have been soon disappeared, and the corporation found itself involved in debts to more than $70,000. Having waived his right, if he had any, to insist upon payment in cash for his interest in the old corporation, having received in the new the exact amount of what he had in the old, it cannot be said that, when the concern was mortgaged and had become insolvent, he had a valid claim against the new corporation, because in 1889 his stock might, upon liquidation, have entitled him to a claim in the then existing surplus. We think there was nothing to submit to the jury upon

this question under the evidence. Neither had he a right to take out of the concern, in the condition financially that the corporation was in, its property, and convert it to his own use. The assets of a corporation are a trust fund for creditors. This was not a partnership, but a corporation, and a stockholder or officer of a corporation has no right to take its property for his own purposes.

But it is said by the defendant that other members of the corporation had taken some of the property, and had it charged to themselves. Explanation is given by other members why goods were taken by them. F. G. Smith took out various amounts in money at different times, but he testifies that he had a credit upon the books of the concern of $5,000, which he could take in money or goods; that this credit was for loans to the company. F. G. Smith, Jr., testified that he took only small amounts, and never to exceed $500, and those amounts were charged to him on the books of the company; that these transactions were before the assignment was made, and most of them before the chattel mortgage was given to Howard. There was nothing shown in the case which warranted the court in submitting to the jury the question whether there was such a custom among the members of the corporation as would make it lawful for the defendant to take out the goods in question for his own use.

We think that, under the facts shown in this case, and under the undisputed evidence, the court should have directed a verdict in favor of the plaintiff.

The judgment must be reversed, and a new trial granted.

GRANT, MONTGOMERY, and MOORE, JJ., concurred. HOOKER, J., did not sit.